WERLEY P. STEGALL AND WIFE, CAROLYN H. STEGALL; ALDEN R. HOGAN AND WIFE, MARY E. HOGAN, AND OTHERS SIMILARLY SITUATED, PLAINTIFFS v. HOUSING AUTHORITY OF THE CITY OF CHARLOTTE, N. C., A PUBLIC BODY CORPORATE; THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION; SUMMERS DEVELOPMENT COMPANY, A NORTH CAROLINA CORPORATION, DEFENDANTS AND VIRGIL R. WILLIAMS, INTERVENING DEFENDANT

No. 48

(Filed 10 February 1971)

1. Deeds § 19— restrictive covenants — benefit to subsequent purchasers

A grantee of land cannot benefit from covenants contained in the deed to his vendor except such as attach to, and run with, the land.

2. Deeds § 19— enforcement of personal covenant

A restriction which is merely a personal covenant with the grantor does not run with the land and can be enforced by him only.

3. Deeds § 19— restrictive covenants — personal obligation or covenant running with land

Whether restrictions imposed upon land by a grantor create a personal obligation or impose a servitude upon the land enforceable by subsequent purchasers from his grantee is determined by the intention of the parties at the time the deed containing the restriction was delivered; this intention must be ascertained from the deed itself and may not be established by parol, but when the language used is ambiguous it is proper to consider the situation of the parties and the circumstances surrounding their transaction.

4. Deeds § 19— restrictive covenants — construction

A deed containing a restrictive covenant must be construed most favorably to the grantee, and all doubts and ambiguities are resolved in favor of the unrestricted use of the property.

5. Deeds § 19— restrictive covenants — burden of showing that covenants run with land

Restrictions in a deed will be regarded as for the personal benefit of the grantor unless a contrary intention appears, and the burden of showing that they constitute covenants running with the land is upon the party claiming the benefit of the restrictions.

6. Deeds § 19— restrictive covenants — whether personal to grantor

In the absence of a general plan of subdivision, development and sales subject to uniform restrictions, restrictions limiting the use of a portion of the property sold are deemed to be personal to the grantor and for the benefit of land retained.

7. Deeds § 19— restrictive covenants — conveyance of all land affected thereby

Where a deed containing a covenant restricting the use of land embraces and conveys all the land affected thereby, such covenant stands only as a personal covenant between the parties.

**8. Deeds § 19— conveyance of all interest in land — imposition of covenant running with land**

Where grantors conveyed all their interest in a tract of land, they had no right to limit its free use by imposing upon it a covenant running with the land except for the benefit of other lands then owned by them.

**9. Deeds § 19— enforcement of restrictive covenant — beneficial interest**

One who seeks to enforce a restrictive covenant must show that he is the owner of or has an interest in the premises in favor of which the benefit or privilege has been created.

**10. Deeds § 19— restrictive covenant — enforcement by grantor — failure to show ownership of property benefited by restriction — enforcement by purchaser from grantee**

The grantor of a tract of land could not enforce a covenant in the grantee's deed restricting the use of "any one lot" to "one single-family residence" where the record fails to show ownership by the grantor of any ascertainable property capable of being benefited by the restriction, testimony by the grantor that he owned property "in the area" when the restriction was inserted in the deed being insufficient to show the requisite ownership; *a fortiorari*, purchasers from the grantee could not enforce the covenant against the grantee.

**11. Deeds § 20— subdivision restrictive covenants — enforcement by lot owner**

Where all lots comprising a subdivision are subject to identical restrictions which the developer, pursuant to a general plan of development, specifically imposed upon them individually by numbers, the owner of any lot in the subdivision may enforce such restrictions, for they are covenants running with the land.

Justice MOORE did not participate in the consideration or decision of this case.

APPEAL by plaintiffs from *Fountain, J.,* 8 June 1970 Civil Session of MECKLENBURG, certified pursuant to G.S. 7A-31(a) for review by the Supreme Court before determination in the Court of Appeals. This appeal was docketed and argued in the Supreme Court as Case No. 67 at the Fall Term 1970.

Action for a declaratory judgment and injunction. Plaintiffs, who own lots fronting on Wyanoke Avenue in the City of Charlotte, brought this action under G.S. 1A-1, Rule 23(a) in behalf of themselves and 20 other such lot owners. They seek to have the adjacent property of defendant Williams, an 8.38-acre tract, which he purchased from Garrison, declared subject to the restriction "that only one single-family residence may be erected on any one lot."

In brief summary the complaint alleges: (1) The deed from Garrison to Williams imposed the foregoing restriction. (2) Williams has granted to defendant Summers Development Company an option to purchase the 8.38 acres for the construction thereon of 50 or more multi-family units. (3) Defendants City of Charlotte and Housing Authority of the City of Charlotte have jointly announced the proposed construction of a 54 unit multi-family duplex development on the tract. Plaintiffs pray that each defendant be enjoined from using "the restricted property" for any purpose other than single-family residences.

Plaintiffs did not make Williams a party to the action. However, upon his motion the court allowed him to intervene as a party-defendant. Answering, each defendant alleged that the covenants in the deed from Garrison to Williams were personal to Garrison; that they were not inserted pursuant to any general plan of development; and that plaintiffs were not entitled to enforce the covenants. Defendants City of Charlotte and Housing Authority denied that either had any present or contingent interest in "the subject land."

The case was tried by Judge Fountain without a jury. The record evidence and testimony disclosed the following:

By deed recorded 8 January 1945, F. B. Garrison and wife acquired a tract of land in Charlotte Township, Mecklenburg County, containing 59.77 acres, more or less. This deed subjected the land conveyed to no restrictive covenants. Thereafter, the Garrisons made three conveyances from this tract: (1) In February 1946, by a deed which imposed no restrictions, they conveyed four acres, more or less, to Queen City Lumber and Supply Company, which has since used the property as a lumber yard and commercial sales area. (2) In June 1949 they conveyed to J. E. Jones, Russell Cannaday, and defendant Williams, a partnership, 37 acres, more or less. This deed likewise contained no restrictive covenants. (3) In July 1958, 18 acres, more or less, were conveyed to defendant Williams. It is 8.38 acres of this tract which is the subject of this action.

In the deed from Garrison to Williams, between the description of the 18 acres conveyed and the habendum clause, appears the following:

"The above land is conveyed subject to the following restrictions:

"1. That it shall be used for residential purposes only.

"2. That only one single-family residence may be erected on any one lot."

By the three conveyances referred to above, F. B. Garrison and wife disposed of the entire 59.77-acre tract except for a lot with a frontage of about 210 feet on the north side of Bascon Street, a depth of approximately 532 feet, and a rear boundary of about 100 feet. This lot is subject to no restrictive covenants. It is, however traversed by 100 feet of the 200-foot right-of-way of the Seaboard Airline Railroad, and is unsuitable for building. Wyanoke Avenue dead-ends in Bascon Street opposite this lot. Garrison owns no rental property within the 59.77-acre tract which he formerly owned. He does, however, own rental property "somewhere in the area."

By a map recorded 19 October 1959, defendant Williams subdivided the northern portion of the 18-acre tract into lots fronting on each side of Wyanoke Avenue. Those lots on the east side of Wyanoke were plotted as lots 37-40 in Block 6 of Walnut Hills; those on the west side, as lots 1-6 in Block 8. On the same day, Williams and his partner, Russell Cannaday, recorded an agreement whereby these lots were subjected to restrictive covenants "running with the land" and "binding on all parties and all persons claiming under them for a period of twenty-five (25) years. . . . " After that time the covenants would be automatically extended for successive periods of ten (10) years unless a majority of those then owning lots agreed by recorded instrument to change the covenants in whole or in part. These covenants, *inter alia*, restricted each lot to residential purposes, and forbade the construction of any dwelling containing less than 864 square feet of living area and costing less than $8,000.00 based on cost levels prevailing as of 19 October 1959.

By map registered 11 August 1960, Williams and Cannaday subdivided and added to Walnut Hills lots 7-11 of Block 8 and lots 32-36 of Block 6. Restrictions substantially the same as those imposed upon the first subdivision were imposed upon the second.

That portion of the 18-acre tract not covered by the sub-division maps of 19 October 1959 and 11 August 1960—the 8.38 acres in suit—is still owned by defendant Williams. It has never been subdivided, and Williams has imposed no restrictions on it. On 2 April 1970 Williams granted to defendant Summers Development Company an option to purchase this remaining land for the sum of $70,000.00. The option was expressly made subject to "existing zoning of R-6MF" (multi-family zoning), "water and sewerage available at the site," and to "Charlotte Housing Authority approval of the site for the construction of fifty (50) or more multi-family units."

The transcript contains no evidence that either the City of Charlotte or the Housing Authority of the City of Charlotte has any legal or equitable interest in the 8-acre tract, which is the subject of this action.

Without objection, Mr. Garrison testified that at the time he conveyed the 18.38-acre tract to Williams "what he had in mind was protecting his rental property that he had somewhere in the area." Also without objection, plaintiff Stegall testified that at the time he purchased his lot No. 7 he asked Mr. Williams what he was going to do with the 8.38-acre tract of land at the foot of Wyanoke Avenue, and Williams told him that he was going to build single-family dwellings.

Judge Fountain found facts in accordance with the foregoing evidence and concluded as a matter of law that restriction No. 2 in the deed from Garrison to Williams "is vague and creates at most a personal covenant enforceable only by defendant Williams' immediate grantors, F. B. Garrison and his wife, upon a suit by them and upon a proper showing of benefit to them to be derived from the enforcement of the said clause." Accordingly, Judge Fountain decreed that clause No. 2 is invalid and unenforceable by plaintiffs and that they are not entitled to injunctive relief. Plaintiffs excepted and appealed.

*Whitfield, McNeely and Echols for plaintiff appellants.*

*James & Williams by Samuel S. Williams and William K. Diehl, Jr., for Virgil R. Williams, intervening defendant appellee.*

*Fleming, Robinson & Bradshaw, PA by Robert C. Sink for Housing Authority of the City of Charlotte, defendant appellee.*

*W. A. Watts for the City of Charlotte, defendant appellee.*

*Sanders, Walker & London for Summers Development Company, defendant appellee.*

SHARP, Justice.

The question presented is whether plaintiffs, who own lots in the northern half of the 18-acre tract conveyed by Garrison to Williams, may enjoin the erection of multi-family units on the southern half of the tract by virtue of the restriction in Williams' deed "that only one single-family residence may be erected on any one lot." Plaintiffs, as grantees of Williams, contend that the restriction is a covenant running with the land which is enforceable by any subsequent grantee of Williams. Defendants contend (1) that it is a personal covenant between Williams and Garrison, not intended for plaintiffs' benefit, and (2) that the restriction is void for vagueness.

[1-4] A grantee of land cannot benefit from covenants contained in the deed to his vendor "except such as attach to, and run with, the land." 20 Am. Jur. 2d *Covenants, Conditions, Etc.* §§ 20, 292 (1965). A restriction which is merely a personal covenant with the grantor does not run with the land and can be enforced by him only. *McCotter v. Barnes,* 247 N.C. 480, 101 S.E. 2d 330; *Julian v. Lawton,* 240 N.C. 436, 82 S.E. 2d 210; 7 Thompson, Real Property § 3168 (1962 Replacement). Whether restrictions imposed upon land by a grantor create a personal obligation or impose a servitude upon the land enforceable by subsequent purchasers from his grantee is determined by the intention of the parties at the time the deed containing the restriction was delivered. Ordinarily this intention must be ascertained from the deed itself, but when the language used is ambiguous it is proper to consider the situation of the parties and the circumstances surrounding their transaction. However, this intention may not be established by parol. Neither the testimony nor the declarations of a party is competent to prove intent. The instrument must be construed most favorably to the grantee, and all doubts and ambiguities are resolved in favor of the unrestricted use of the property. The foregoing rules of construction have been often stated. *See Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360, and cases cited therein; *Cummings v. Dorsam, Inc.,* 273 N.C. 28, 159 S.E. 2d 513; *Long v. Branham,* 271 N.C. 264, 156 S.E. 2d 235; *Lamica v. Gerdes,* 270 N.C. 85,

153 S.E. 2d 814; *Hege v. Sellers,* 241 N.C. 240, 84 S.E. 2d 892; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697.

In July 1958, at the time Garrison conveyed the 18 acres by metes and bounds to Williams, no part of the 18 acres had been subdivided into building lots, and there was in existence no map or general plan of development for that tract. The first map of Walnut Hills, Williams' subdivision of the northern portion of the tract, was dated, approved by the Charlotte-Mecklenburg Planning Commission, and recorded on 19 October 1959. From 8 January 1945, the date the Garrisons acquired the 59.77-acre tract from which they sold the 18 acres to Williams, they never subdivided the property into lots or made any plans for developing it themselves. It was divided into three separate tracts by the three sales above noted.

[5-7] Restrictions in a deed will be regarded as for the personal benefit of the grantor unless a contrary intention appears, and the burden of showing that they constitute covenants running with the land is upon the party claiming the benefit of the restriction. 26 C.J.S. *Deeds* § 167(3) (1956); 7 Thompson, Real Property § 3152 (1962 Replacement). "These principles apply with especial force to persons who (as here) are not parties to the instrument containing the restriction." *Stevenson v. Spivey,* 132 Va. 115, 120, 110 S.E. 367, 368, 21 A.L.R. 1276, 1278. In the absence of a general plan of subdivision, development and sales subject to uniform restrictions, restrictions limiting the use of a portion of the property sold are deemed to be personal to the grantor and for the benefit of land retained. *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344. Furthermore, "where . . . a deed containing a covenant restricting the use of land embraces and conveys all the land affected thereby, such covenant stands only as a personal covenant between the parties." *Craven County v. Trust Co.,* 237 N.C. 502, 516-517, 75 S.E. 2d 620, 631.

[8] For all practical purposes, after the Garrisons conveyed the 18 acres to Williams, they had disposed of the entire 59.77-acre tract. The lot retained, which is less than an acre, is useless because encumbered by the railroad right-of-way. Indeed, Garrison testified that he would be glad to give it to the City. Thus, the restriction which the Garrisons inserted in their deed to Williams could not have been for the benefit of any part of the 59.77-acre tract. Having parted with all their interest in

the 18 acres the Garrisons had no right to limit its free use by imposing upon it a covenant running with the land except for the benefit of other lands then owned by them. *Craven County v. Trust Co., supra.* "[T]he existence of the dominant estate is ordinarily essential to the validity of the servitude granted, and the destruction of the dominant estate releases the servitude." *Welitoff v. Kohl,* 105 N.J. E. 181, 188, 147 Atl. 390, 393, 66 A.L.R. 1317, 1323. "A restrictive covenant can be enforced only by the owner of some part of the dominant land for the benefit of which the covenant was made. It cannot be enforced by the grantor who created the covenant, nor by his heirs, after he or they have parted with all interest in any land benefited by the covenant." 7 Thompson, Real Property § 3172 (1962 Replacement). *Accord,* 26 C.J.S. *Deeds* § 162(3) at 1094 (1956) ; *Kent v. Koch,* 333 P. 2d 411 (Dist. Ct. App. Cal.). *See* 20 Am. Jur. 2d *Covenants, Conditions, Etc.* § 290 (1968) ; *Welitoff v. Kohl, supra.*

[9, 10]   One who seeks to enforce a restrictive covenant "must show that he is the owner of or has an interest in the premises in favor of which the benefit or privilege has been created; otherwise, he has no interest in the covenant and is a mere intruder." *Los Angeles University v. Swarth,* 107 F. 798, 804 (C.C.S.D. Cal.). Garrison testified that at the time the restriction in question was inserted in Williams' deed he owned property "in the area." The record, however, does not disclose its location or distance from the 18-acre tract. Unless it was close enough to the 18-acre tract to be adversely affected by Williams' disregard of the covenant restricting the use of "any one lot" to "one single-family residence," the Garrisons themselves could not enforce the covenant.

The meager and imprecise language by which the Garrisons attempted to impose restrictions upon Williams' 18 acres makes it imposible to ascertain their real purpose. If the "one-family lot" restriction was inserted for the benefit of other lands retained by the Garrisons it would have been very easy for them to have specified the land. Furthermore, "[T]he word *lot* has no definite significance with reference to dimensions, and, as an indication of quantity, the term is of the vaguest import and contains no legal or other meaning in this respect. How much and what it includes must be determined by the facts and circumstances of each particular case. A lot may be large

Stegall v. Housing Authority

or it may be small but the term is most frequently used to describe a small parcel than a large parcel." 54 C.J.S. at 840 (1948). Had Williams extended Wyanoke Avenue through the 8.38-acre tract and divided it into 30- x 50-foot lots on which he had erected a series of one-family townhouses with party walls, could Garrison have successfully contended that he had violated the restriction against multiple-unit dwellings?

[10] Be that as it may, on this record the Garrisons own "no ascertainable property capable of being benefited" by the restrictions in suit. See Re Union of London & Smith's Bank Limited's Conveyance, 1 Ch. 611, 89 A.L.R. 797. If the Garrisons, as Williams' grantors, could not enforce the restriction against Williams, a fortiorari, plaintiffs, as the grantee of Williams, could not enforce it against Williams.

[11] Plaintiffs Stegall and Hogan own two of the 21 lots comprising the Walnut Hills subdivision. All of these lots are subject to identical restrictions which Williams, pursuant to a general plan of development, specifically imposed upon them individually by number. The owner of any one of these 21 lots may enforce these restrictions against any other owner, for they are covenants running with the land. Tull v. Doctors Building, Inc., 255 N.C. 23, 120 S.E. 2d 817; Bailey v. Jackson, 191 N.C. 61, 131 S.E. 567. The adjoining 8.38-acre tract in suit, however, was not made a part of Walnut Hills, and Williams has not subjected it to these restrictions. The ruling of the court below that "the purported restriction contained in clause numbered 2" in the deed from Garrison to Williams was not a covenant running with the 18-acre tract therein conveyed and that plaintiffs have no right to enforce it is correct. The judgment of Fountain, J., is

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.